IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Michael Pooner**<br>10300 Sunnylake Place<br>Cockeysville, Maryland 21030 | *<br><br>* | |
| *On behalf of himself and<br>others similarly situated* | *<br><br>* | |
| **Plaintiffs** | * | |
| v. | * | Case No. _____ |
| **Mariner Finance, LLC**<br>8211 Town Center Drive<br>Nottingham, Maryland 21236 | *<br><br>*<br><br>* | |
| a Maryland Limited Liability Corp. | * | |
| **Joshua Johnson**<br>8211 Town Center Drive<br>Nottingham, Maryland 21236 | *<br><br>*<br><br>* | |
| **Michele Strohm**<br>8211 Town Center Drive<br>Nottingham, Maryland 21236 | *<br><br>*<br><br>* | |
| **Defendants**<br>_____/ | | |

**COLLECTIVE ACTION COMPLAINT UNDER THE
FAIR LABOR STANDARDS ACT FOR MONEY DAMAGES**

Plaintiff, Mr. Michael Pooner, on behalf of himself and others similarly situated, and through undersigned counsel, states a collective action complaint against Defendants Mariner Finance, LLC, Mr. Joshua Johnson, and Ms. Michele Strohm, pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and supplemental state law claims under the Maryland Wage and Hour Law, Md. Code Ann., LE Art. § 3-401 *et seq* ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann., LE Art. § LE 3-501 *et*

*seq.* ("MWPCL"), and demands a jury trial, as follows:

## Introduction

1. This is a collective action for unpaid wages, damages, and relief provided by the FLSA, 29 U.S.C. § 201 *et seq.*, the MWHL, Md. Code Ann., LE Art. § 3-401 *et seq.*, and the MWPCL, Md. Code Ann., LE Art. § 3-501 *et seq.* Plaintiff brings this action on behalf of himself and all persons similarly situated who have worked at any of the Mariner Finance branch locations as account representatives and customer service representatives throughout the United States, which is owned, controlled and operated by the Defendants named herein.

2. Plaintiff seeks on behalf of himself and others similarly situated, in addition to the actual sums owed in unpaid overtime wages, liquidated and statutory damages pursuant to the FLSA, MWHL, and MWPCL, and attorneys' fees and costs as provided under the under the FLSA, MWHL, and MWCPL.

## Jurisdiction and Venue

3. This Court has subject matter/original jurisdiction over this action pursuant to 29 U.S.C. § 207 and 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction over the MWHL and MWPCL claims pursuant to 28 U.S.C. § 1367(a) because said claims are so related to the FLSA claims that they form part of the same case or controversy.

5. Plaintiff Pooner is a resident of Baltimore County, Maryland.

6. Defendants operate a personal loan finance company in Baltimore County (Nottingham), Maryland.

7. Plaintiff Pooner worked at the Pikesville and Woodlawn offices of Defendant Mariner Finance, LLC.

8.      Venue and personal jurisdiction are proper pursuant to 28 U.S.C. § 1391(b), because Defendants do business within this judicial district and the events and omissions giving rise to the claims in this Complaint occurred in this judicial district.

## Parties

9.      Defendant Mariner Finance, LLC is a limited liability corporation formed in the State of Maryland to engage in the operation of a personal finance company.

10.     At all times material herein, Defendant Mariner Finance, LLC had an annual gross volume of sales made or business done in an amount exceeding $500,000.00.

11.     Defendant Mariner Finance, LLC employs at least two or more employees who are engaged in commerce, and who produce goods for commerce, or handle, sell, or otherwise work on goods or materials that have moved in or were produced for commerce as a single enterprise under the FLSA.

12.     For instance, as a personal finance company, there are scores of employees of Defendant Mariner Finance, LLC who use office supplies, computers and other related materials that have moved in interstate commerce.

13.     Accordingly, subject matter jurisdiction exists because Plaintiff, and others similarly situated, are employed by Defendant Mariner Finance, LLC, a covered entity, satisfying the enterprise coverage provisions under the FLSA.  Defendant Mariner Finance, LLC also satisfies the coverage provisions of the MWHL.  As a covered enterprise, Defendant Mariner Finance, LLC has at all material times been an "employer" within the meaning of the FLSA, MWHL, and MWPCL.

14.     Defendant Joshua Johnson is the President/CEO of Defendant Mariner Finance, LLC, with complete operational control of Mariner Finance.  Upon information and belief, Defendant

Johnson maintains custody and control of Mariner Finance's business records and shares responsibility with others for maintaining those records, such as payroll records. Additionally, upon information and belief, for all times material to this case, Defendant Johnson was, and continues to be, aware of operational issues throughout Mariner Finance, and is knowledgeable of Mariner Finance's past and present employment practices and policies. Upon information and belief, for all times material to this case, Defendant Johnson possessed and continues to possess the authority and discretion to fix, adjust and determine hours worked and amounts paid with respect to employees at Mariner Finance, including Plaintiff, and possessed the ability to hire employees and terminate employees. Upon information and belief, Mr. Johnson receives and continues to receive income from Defendant Mariner Finance, LLC, and has been enriched by the failure of the Defendants to properly pay workers such as the Plaintiff. At all times material herein, Defendant Johnson has been an "employer" within the meaning of the FLSA, MWHL, and MWPCL. Defendant Johnson is thus jointly and individually liable for damages to Plaintiff, and others similarly situated opt-in Plaintiffs, arising under the FLSA, MWHL, and MWPCL.

15.     Defendant Michele Strohm is the Assistant Vice President of Defendant Mariner Finance, LLC. Upon information and belief, for all times material to this case, Defendant Strohm was and remains involved in and responsible for, informing employees of all other Mariner Finance's employment policies and practices; scheduling employee work hours/shifts; supervising and conducting payroll operations, including distribution of paychecks to employees; assignment of work tasks and job positions; and setting and supervising employee clock-in and clock-out requirements and practices. Additionally, upon information and belief, for all times material to this case, Defendant Strohm possessed and continues to possess

authority to hire and fire Mariner Finance employees. At all times material herein, Defendant Strohm has been an "employer" within the meaning of the FLSA, MWHL, and MWPCL. Defendant Strohm is jointly and individually liable for damages to Plaintiff, and others similarly situated opt-in Plaintiffs, arising under the FLSA, MWHL, and MWPCL.

16. As set forth below, Plaintiff seeks unpaid overtime wages, in amounts to be determined based on the evidence, as well as liquidated and statutory damages, pursuant to the FLSA, MWHL, and MWPCL, and attorneys' fees and costs as provided under the FLSA, MWHL, and MWCPL.

17. Upon information and belief, there exists more than fifty (50) employees of Defendants who are similarly situated to Plaintiff, who have worked for Defendants in the last three years as account representatives or customer service representatives at branch locations of Mariner Finance, and who have not received overtime wages, based on the same factual reasons that Plaintiff was denied overtime, as alleged in greater detail in paragraphs 38-43 below.

18. Plaintiff and other employees similarly situated, consisting of account representatives and customer service representatives, all of whom received hourly pay, were not exempt under the MWHL and FLSA's overtime requirements.

19. By failing to pay overtime to Plaintiff and similarly situated account representatives and customer service representatives, Defendants willfully violated very clear and well-established overtime provisions under the FLSA and the MWHL. In addition to actual sums owed, Plaintiff seeks, on behalf of himself and other employees similarly situated, liquidated (statutory) damages pursuant to the FLSA, pre-judgment interest on all amounts owed under the MWHL, three times the overtime owed under the MWHL pursuant to the statutory damage provisions of the MWHL and MWPCL, and attorneys' fees and costs as provided under the

FLSA, the MWHL and MWPCL.

### Factual Allegations

20. Plaintiff was employed by the Defendants at two branch locations of Mariner Finance within the three years preceding the filing of this lawsuit, i.e., June 2016 through April 9, 2018. For the entire time that Plaintiff worked for Defendants, Plaintiff served as an account representative and earned an hourly wage.

21. Plaintiff's compensation arrangement was similar to other Mariner Finance account representatives and customer service representatives, insofar as all account representatives and customer service representatives were paid an hourly rate as opposed to a salary.

22. Plaintiff's final hourly rate was $16.00/hour.

23. Plaintiff worked in the Pikesville and Woodlawn branches of Mariner Finance.

24. As an account representative, Plaintiff's primary duty was to assist loan applicants with the personal loan process.

25. Plaintiff would screen applicants, take/accept applications, gather personal information and financial worthiness data, and verify employment of applicants.

26. Plaintiff would also assess applicants to determine if the applicants were qualified, which generally was based on the ability to repay a personal loan.

27. Plaintiff was also involved in processing liens.

28. Plaintiff was ostensibly scheduled to work from 9:00 am to 5:00 pm, Monday, Wednesday and Thursday, with a ½ hour break.

29. These were the hours that all Mariner Finance branch locations are open on Monday, Wednesday and Thursday.

30. There were also the hours that other account representatives and customer service representatives were ostensibly scheduled to work on Mondays, Wednesdays, and Thursdays.

31. On Tuesday, Plaintiff was ostensibly scheduled to work from 9:00 am to 7:00 pm, with a ½ hour break.

32. These were the hours that all Mariner Finance branch locations are open on Tuesday.

33. There were also the hours that other account representatives and customer service representatives were ostensibly scheduled to work on Tuesdays.

34. On Friday, Plaintiff ostensibly worked from 9:00 am to 5:30 pm, with a ½ hour break.

35. These were the hours that all Mariner Finance branch locations are open on Friday.

36. There were also the hours that other account representatives and customer service representatives were ostensibly scheduled to work on Fridays.

37. Additionally, at the end of the Month, if the office was behind in collections, Plaintiff would be asked to come in and work on Saturdays.

38. Other account representatives and customer service representatives were subject to the same requests.

39. Ostensibly, when reducing Plaintiff's schedule for the ½ hour daily break, Defendants required Plaintiff and other account representatives and customer service representatives to work exactly 40 hours each week.

40. However, Plaintiff and other account representatives and customer service representatives routinely worked over forty (40) hours in a statutory workweek and did not get paid any additional pay whatsoever.

41. This is because Defendants maintained three policies, which separately and operating together caused Plaintiff and other account representatives and customer service representatives

to work over 40 hours in a statutory workweek.

42.     First, each branch of Mariner Finance has a "cash box," in which select personnel are assigned the duties of accepting cash and check payments received from borrowers. Plaintiff and other account representatives and customer service representatives would have last minute borrowers appear to make payment. Accordingly, Plaintiff and other account representatives and customer service representatives were required to spend time post-closing to handle the currency and checks, and tend to "close out" duties.

43.     This time would be, a minimum of 15 minutes after the close of the office, with the time generally being 15 to 30 minutes after the close of each branch.

44.     Moreover, Plaintiff and other account representatives and customer service representatives then would have to drive to the bank to make the deposit, which at least as far as the Woodlawn and Pikesville branches are concerned, would be another 10 minutes.

45     So, Plaintiff would spend on average half an hour after the close of each shift taking care of the cash box, and as much as 45 minutes if the branch was busy or traffic was heavy.

46.     Second, and interrelated, Defendants maintained stringent sales requirements. Like other account representatives and customer service representatives, Plaintiff was required to generate at least one loan per day, or generate five (5) loans per week.

47.     Defendants' sales driven focus prevented Plaintiff and other account representatives and customer service representatives from focusing on any of the administrative closing work, in preparation of the branch closing, because of the pressure to service customers during normal business hours. Many times, customers might appear at the branch last minute and the Plaintiff and other account representatives and customer service representatives would tend to these late arriving customers. For example, the branches might close at 5:00 pm on Monday, Wednesday

and Thursday, but transactions were not halted and customers shown the exit at 5:00 pm sharp.

48. Third, Defendants maintained a timekeeping system designed to prevent and deter Plaintiff and other account representatives and customer service representatives from accurately reporting their actual time worked. Plaintiffs and other account representatives and customer service representatives had to complete their timesheets and submit them online by Friday, when the pay period ended. If Plaintiff, or other account representatives and customer service representatives tried to put in hours that would result in overtime pay, then those overtime hours would not get approved.

49. Thus, Defendants maintained at least three employment practices, equally applicable to account representatives and customer service representatives throughout their many branches, in which they would require the Plaintiff and other account representatives and customer service representatives to not just work over forty (40) hours in a statutory workweek, but to deliberately underreport their actual hours of work.

50. Accordingly, the Plaintiff, along with account representatives and customer service representatives (particularly those with the responsibility to handle the "cash box") frequently worked "off-the-clock" hours in amounts that are more than *de minimis* under prevailing interpretations of the FLSA.

51. Furthermore, Defendants had knowledge that the Plaintiff, and others similarly situated account representatives and customer service representatives all of whom were classified as non-exempt, worked in excess of forty (40) hours a week, but were only paid their hourly wage for the time that they were scheduled, i.e., 40 hours a week.

52. For example, Plaintiff brought up the issue of overtime being worked and not receiving pay to Defendant Strohm, and Defendant Strohm said it was "part of the job."

53.     Additionally, Plaintiff told Defendant Strohm that he had to stay over and close loans, and Defendant Strohm replied "good."

54.     Defendants' method of depriving the Plaintiff, and others account representatives and customer service representatives, of proper overtime constitutes a willful violation of the FLSA by Defendants.  Defendant Mariner Finance, LLC is a large corporation with access to human resource professionals and employment lawyers with experience in FLSA matters.  Defendant Mariner Finance, LLC classified the Plaintiff as non-exempt under the FLSA, and understood that they were requiring their account representatives and customer service representatives, like the Plaintiff, to perform off-the-clock work which, if added to other scheduled work time, would result in overtime liability.  It is inconceivable that this was an innocent error by Defendants, but rather a calculated effort to avoid paying proper overtime wages under the FLSA.

## Causes of Action

### COUNT I
### (FLSA - Failure to Pay Overtime)

55.     Plaintiff incorporates paragraphs 1-54 as set forth above, and states that Defendants actions complained of herein constitute a willful violation of Section 7(a)(1) of the FLSA, because Defendants - at all times during the Plaintiff's employment - have willfully failed and otherwise refused to compensate the Plaintiff, and other similarly situated non-exempt (hourly) account representatives and customer service representatives, for hours in excess of forty hours in a work week at a rate of not less than one and one-half times their regular rate of pay.

## COUNT II
### (MWHL - Failure to Properly Pay Overtime)

56. Plaintiff incorporates paragraphs 1-55 as set forth above, and states that Defendants' actions complained of herein constitute a violation of Md. Ann. Code LE Art. § 3-420 (overtime) because Defendants have, at all material times, failed and otherwise refused to compensate Plaintiff for all hours worked in excess of forty hours a work week at a rate of not less than one and a half (1 ½) times their regular rate of pay, as computed under Md. Ann. Code LE Art. § 3-420.

57. Defendants' actions complained of herein constitute a violation of Section 3-415 of the MWHL, because Defendants failed to compensate Plaintiff at a proper overtime rate for hours worked in excess of forty hours in a work week at a rate of not less than one and a half (1 ½) times the Plaintiff's regular rate of pay, as required by Maryland law.

58. As a result, Defendants owe Plaintiff overtime wages in the amount of one and a half (1 ½) times the Plaintiff's regular rate of pay, for all work weeks he worked in excess of forty hours per week.

## COUNT III
### (MWPCL Act – Unpaid Wages)

59. Plaintiff incorporates paragraphs 1-58 as set forth above, and states that the actions of Defendants, in failing to pay overtime wages when earned, constitutes violation of the MWPCL, Md. LE Art. § 3-502(a)(ii) and § 3-505(a).

60. That the MWHL further compels each covered employer and non-exempt employee to make, as part of any working agreement, a promise to pay overtime wages as applicable under the MWHL.

61. That impliedly, by operation of law, Plaintiff was entitled to be paid overtime wages by Defendants which have gone unpaid.

62. That there are no bona fide disputes between the parties as to the right of the Plaintiff to receive overtime wages. Defendants knew, or should have known, that it is a covered entity under the MWHL, and that Plaintiff performed work as an employee for which he was not properly compensated.

63. Plaintiff is thus entitled under MWPCL, Md. LE Art. § 3-507.2 to an award of treble damages and attorneys' fees with respect to the wages, i.e. the MWHL-mandated minimum wages and overtime wages, that have gone unpaid.

### Prayer

Based on the foregoing allegations, Plaintiff respectfully requests that this Court grant money damages in an amount to be determined by the evidence, exclusive of attorney's fees and costs; and in support thereof, requests this Honorable Court to issue the following Orders:

(a) Certify this action as a collective action pursuant to 29 U.S.C. § 216(b), and (i) compel Defendants to provide all material contact information, including email addresses and cell phone numbers, for potential opt-in Plaintiffs who performed work as account representatives and customer service representatives for Mariner Finance, LLC; (ii) issue appropriate Notices in connection with Conditional Certification of an FLSA collective action class; (iii) supervise the maintenance of this FLSA collective action; and (iv) supervise and enter appropriate orders allowing this matter to be tried as an FLSA collective action.

(b) Order Defendants to pay Plaintiff (and all similarly situated employees of Defendant who file an opt-in notice in this litigation), all unpaid overtime premiums determined by the Court to be due and owing, under the FLSA, MWHL, and MWPCL, as well as a sum of

liquidated damages in an amount equal to the amount of any unpaid overtime premiums awarded to Plaintiff (and all similarly situated employees of Defendants who file an opt-in notice in this litigation), pursuant to the FLSA;

(c) Award Plaintiff (and all similarly situated employees of Defendants who file an opt-in notice in this litigation), his attorneys' fees and costs in pursuing this action;

(d) Award Plaintiff (and all similarly situated employees of Defendants who file an opt-in notice in this litigation), interest on any sums determined due and owing from Defendants, including pre-judgment interest on attorneys' fees and costs in pursuing this action;

(e) Grant Plaintiff (and all similarly situated employees of Defendants who file an opt-in notice in this litigation), any additional relief that the Court deems appropriate and just.

Respectfully submitted,

/s/
Howard B. Hoffman, Esquire
Attorney at Law
Federal Bar No. 25965
600 Jefferson Plaza, Suite 304
Rockville, MD 20852
(301) 251-3752
(301) 251-3753 (fax)

Attorney for Plaintiff


### Jury Demand

The Plaintiff, by his attorney, hereby demands a jury trial as to all issues triable by a jury.

*/s/ Howard B. Hoffman*
Howard B. Hoffman