IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL POONER,
    *Plaintiff*,

v.

MARINER FINANCE, LLC, et al.,
    *Defendants*.

Civil Action No. ELH-18-1736

**MEMORANDUM OPINION**

Plaintiff Michael Pooner filed a collective action against his former employer, Mariner Finance, LLC ("Mariner"), as well as Joshua Johnson, president and chief executive officer of Mariner, and Michele Strohm, Assistant Vice President of Mariner. ECF 1 (the "Complaint"). He alleges that defendants failed to compensate him for overtime, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Maryland Wage and Hour Law, Md. Code (2016 Repl. Vol., 2017 Supp.), § 3-401 *et seq.* of the Labor & Employment Article ("L.E") ("MWHL"); and the Maryland Wage Payment and Collection Law, L.E. § 3-501 *et seq.* ("MWPCL").[1] In addition to the unpaid overtime wages, plaintiff seeks "liquidated and statutory damages pursuant to the FLSA, MWHL, and MWPCL" as well as attorneys' fees and costs. *Id*. ¶ 2.

Now pending is plaintiff's motion for conditional certification of a collective action (ECF 17) (the "Motion"), supported by several exhibits. ECF 17-1 to ECF 17-9. Specifically, Pooner seeks conditional certification under the FLSA of "a nationwide class of all account representatives and customer service representatives employed by Mariner and any of its related affiliates, from

---

[1] Maryland's Wage and Hour Law is the State equivalent to the FLSA. *Newell v. Runnels*, 407 Md. 578, 649, 649 n. 34, 967 A.2d 729, 771, 771 n. 34 (2009).

the three year period preceding the date of the filing of this Motion (December 3, 2015) through the date that this Motion is granted, who have worked for Mariner as an account representative or customer service representative." ECF 17 at 9 (internal footnote omitted). Defendants oppose the Motion (ECF 20), supported by exhibits. ECF 20-1 to ECF 20-4. Plaintiff replied. ECF 23.

The Motion is fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion, without prejudice.

## I. Factual Allegations

From June 2016 through April 9, 2018, Pooner was employed by Mariner, a personal finance company. ECF 1, ¶ 20. He worked as an account representative in Maryland at branches located in Pikesville and Woodlawn. ECF 1, ¶¶ 20, 23. Mariner has at least 118 branches in at least 21 states. *See* ECF 17-4; ECF 17-5. According to Pooner, more than fifty similarly situated employees nationwide have worked for Mariner in the last three years as account representatives or customer service representatives, and they did not receive overtime wages. *Id.* ¶ 17.

Plaintiff alleges that Johnson, as president and chief executive officer of Mariner, has complete operational control of the company and authority over hours worked and amounts paid. *Id.* ¶ 14. He also alleges that Strohm, the company's assistant vice president, is responsible for informing all Mariner employees of its employment policies and practices. *Id.* ¶ 15. Strohm also allegedly schedules employee shifts, supervises payroll operations, and sets and supervises employee clock-in and clock-out requirements and practices. *Id.* And, she allegedly has the authority to hire and terminate Mariner employees. *Id.*

Pooner asserts that he was paid an hourly wage throughout his entire employment with Mariner (*id*. ¶ 20), with a final hourly wage of $16.00. *Id.* ¶ 22. He also alleges that all customer service representatives and account representatives (the "other representatives") were paid an

hourly wage and were not salaried. *Id.* ¶ 21. As an account representative, Pooner assisted loan applicants with the personal loan process. *Id.* ¶ 24. He also screened applicants, accepted applications, gathered personal and financial information, and verified employment of applicants. *Id.* ¶ 25. Further, he assessed applicants' ability to repay a personal loan, and he was involved in processing liens. *Id.* ¶¶ 26, 27.

Pooner claims that he and the other representatives were scheduled to work all of the hours that Mariner's branch locations were open. *Id.* ¶¶ 29, 32, 35. Specifically, Pooner and the other representatives were scheduled to work from 9:00 a.m. to 5:00 p.m. on Mondays, Wednesdays, and Fridays; from 9:00 a.m. to 7:00 p.m. on Tuesdays; and from 9:00 a.m. to 5:30 p.m. on Fridays. *Id.* ¶¶ 28, 30, 31, 33, 34, 36. They had a half-hour break each day. *Id.* ¶¶ 28, 30, 34.

Although Pooner and the other representatives were scheduled to work precisely 40 hours each week (*id*. ¶ 39), Pooner alleges that he and the other representatives routinely worked more than their 40 scheduled hours, without overtime payment. *Id.* ¶ 40. For example, if the branch was behind on collections at the end of the month, he and other representatives were asked to come into work on Saturday. *Id*. ¶¶ 37-38. The Complaint alleges that three policies operating "separately and . . . together" caused plaintiff and the other representatives to "frequently [work] 'off-the-clock' hours in amounts that are more than *de minimis* under prevailing interpretations of the FLSA." *Id*. ¶¶ 41, 50.

First, plaintiff alleges that each Mariner branch has a "'cash box,' in which select personnel are assigned the duties of accepting cash and check payments received from borrowers." *Id*. ¶ 42. When borrowers arrived at the branch just before closing, Pooner and other representatives assigned to the cash box were allegedly "required to spend time post-closing to handle the currency and checks, and tend to 'close out' duties." *Id*. ¶¶ 41-42. These activities typically required Pooner

and other representatives to remain at the branch for 15 to 30 minutes after closing. Moreover, Pooner and these representatives then allegedly had to "drive to the bank to make the deposit," which was 10 minutes away. *Id*. ¶ 44. According to the Complaint, after closing, Pooner and other representatives had to spend 30 to 45 minutes on cash box duties. *Id*. ¶ 45.

Second, Pooner alleges that defendants imposed "stringent sales requirements." *Id.* ¶ 46. Plaintiff and the other representatives were "required to generate at least one loan per day, or generate five (5) loans per week." *Id*. Because of "the pressure to service customers during normal business hours," including customers who arrived just before closing, and because of the "sales driven focus," plaintiff alleges that they sometimes had to remain past closing hours. *Id*. ¶ 47.

Third, Pooner alleges that defendants maintained a timekeeping system designed to prevent and deter employees from accurately reporting overtime hours. *Id.* ¶ 48. Plaintiff and the other representatives had to complete and submit their time sheets online by Friday at the end of each pay period. *Id.* However, if a representative entered hours that would result in overtime payment, the overtime hours would not be approved. *Id*. Therefore, they were required "to deliberately underreport their actual hours of work." *Id*. ¶ 49.

According to Pooner, defendants knew that plaintiff and the other representatives worked more than 40 hours per week, but did not pay them for the overtime hours. *Id*. ¶ 51. Pooner alleges that when he raised the issue of unpaid overtime with Strohm, she said it was "'part of the job.'" *Id*. ¶ 52. On another occasion, when Pooner allegedly told Strohm that he had "to stay over and close loans," she replied "'good.'" *Id*. ¶ 53. Pooner alleges that defendants willfully violated the FLSA by failing to pay him and other similarly situated employees for overtime hours. *Id*. ¶ 54.

## II. Discussion

### A.

Congress enacted the FLSA in 1938 "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)) (alterations in *Barrentine*); *see Encino Motorcars, LLC v. Navarro*, 579 U.S.___, 136 S. Ct. 2117, 2121 (2016); *Morrison v. Cnty. of Fairfax, Va.*, 826 F.3d 758, 761 (4th Cir. 2016); *see also McFeeley v. Jackson Street Entertainment, LLC*, 825 F.3d 235, 240 (4th Cir. 2016) ("Congress enacted the FLSA to protect 'the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others.'") (citations omitted).

In particular, "the FLSA requires employers to pay overtime to covered employees who work more than 40 hours in a week." *Encino Motorcars, LLC v. Navarro*, 584 U.S. ___, 138 S. Ct. 1134, 1138 (2018) (citation omitted); *see Perez v. Mortgage Bankers Ass'n*, 575 U.S.___, 135 S. Ct. 1199, 1204 (2015); *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, ___, 135 S. Ct. 513, 516 (2014); *see also Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 658 (4th Cir. 2016) ("The FLSA requires that employers pay employees the minimum hourly wage 'for all hours worked.'") (quoting *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 363 (4th Cir. 2011)). Moreover, the FLSA has established the "general rule that employers must compensate each employee 'at a rate not less than one and one-half times the regular rate' for all overtime hours that an employee works." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) (quoting 29 U.S.C. § 207(a)(1)).

Thus, the FLSA is now "best understood as the 'minimum wage/maximum hour law." *Trejo v. Ryman Hospitality Properties, Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (citation omitted). The Fourth Circuit explained in *Monahan v. Cnty. of Chesterfield, Va.*, 95 F.3d 1263, 1266-67 (4th Cir. 1996): "The two central themes of the FLSA are its minimum wage and overtime requirements. . . . The FLSA is clearly structured to provide workers with specific minimum protections against excessive work hours and substandard wages." (Internal quotations omitted).

"Under the FLSA, plaintiffs may maintain a collective action against their employer for violations under the act pursuant to 29 U.S.C. § 216(b)." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762. 771 (D. Md. 2008). Section 216(b) "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros*, 532 F. Supp. 2d at 771.

Section 216(b) states, in pertinent part:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Pursuant to § 216(b), "[d]eterminations of the appropriateness of conditional collective action certification and court-facilitated notice are left to the court's discretion." *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010). Generally, when assessing whether to certify a collective action pursuant to the FLSA, district courts in this circuit adhere to a two-stage process. *See, e.g.*, *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012); *see also Blake v. Broadway Servs., Inc.*, CCB-18-086, 2018 WL 4374915, at *3 (D. Md. Sept. 13, 2018); *Radfar v. Rockville Auto Grp. LLC*, GJH-16-3082, 2018 WL 2972485, at *4 (D. Md. June 12, 2018);

*Flores v. Unity Disposal & Recycling, LLC*, GJH-15-196, 2015 WL 1523018, at *2-3 (D. Md. Apr. 2, 2015); *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007).

"In the first stage, commonly referred to as the notice stage, the court makes a threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated, such that court-facilitated notice to putative class members would be appropriate." *Butler*, 876 F. Supp. 2d at 566 (internal quotations omitted). The second stage is sometimes referred to as the decertification stage. *Butler*, 876 F. Supp. 2d at 566. "In the second stage, following the conclusion of discovery, the court engages in a more stringent inquiry to determine whether the plaintiff class is [in fact] similarly situated in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action." *Syrja*, 756 F. Supp. 2d at 686 (internal quotations and citations omitted) (alterations in *Syrja*).

The Motion pertains only to the first step of conditional certification. *See* ECF 17. The central question is whether plaintiffs "are similarly situated in a way that suggests they were victims of a common policy, scheme, or plan that violated the FLSA." *Desmond v. Alliance, Inc.*, CCB-14-3499, 2015 WL 2165115, at *3 (D. Md. May 7, 2015). So long as "the plaintiffs have offered enough evidence for the court to make such a determination, and if differences between individuals (whether with the same job or different job titles) do not make clear that a collective action would be unmanageable . . . a notice-stage certification is appropriate." *Id.* (internal citations omitted); *cf. Syrja*, 756 F. Supp. 2d at 688 (denying conditional certification because "the adjudication of multiple claims . . . would require the parties, the Court, and perhaps eventually a jury, to engage in an unmanageable assortment of individualized factual inquiries").

At the first stage, to warrant conditional certification, a plaintiff need only show that the proposed members of the collective are "similarly situated" within the meaning of 29 U.S.C. § 216(b). *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000) (citations omitted). "'[S]imilarly situated' need not mean 'identical.'" *Bouthner v. Cleveland Const., Inc.*, RDB-11-0244, 2012 WL 738578, at *4 (D. Md. Mar. 5, 2012) (citation omitted). Moreover, at the stage of conditional certification for FLSA collective actions, plaintiffs generally must make "only a relatively modest factual showing" as to the existence of a common policy, scheme, or plan that violates the FLSA. *Butler*, 876 F. Supp. 2d at 566; *see Marroquin v. Canales*, 236 F.R.D. 257, 259 (D. Md. 2006).

Indeed, "[b]ecause the court has minimal evidence [at this stage], this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class." *Calderon v. Geico General Ins. Co.*, RWT-10-1958, 2011 WL 98197, at *4 (D. Md. Jan. 12, 2011) (quoting *Yeibyo v. E-Park of DC, Inc.*, DKC-07-1919, 2008 WL 182502, at *7 (D. Md. Jan. 18, 2008)) (second alteration in *Calderon*). However, plaintiffs must provide "more than vague allegations with meager factual support, but [they] need not enable the court to reach a conclusive determination whether a class of similarly situated plaintiffs exists." *Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 576 (D. Md. 2014) (citing *Mancia*, CCB-08-0273, 2008 WL 4735344, at *2) (alteration in *Randolph* and internal quotations and citations omitted). And, "[f]actual disputes do not negate the appropriateness of court facilitated notice." *Camper*, 200 F.R.D. at 520 (citations omitted).

However, to make the requisite showing, "[m]ere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made." *Camper*, 200 F.R.D. at 520. Notably, "[p]laintiffs may rely on '[a]ffidavits or other means,' such as declarations and

deposition testimony." *Butler*, 876 F. Supp. 2d at 567 (quoting *Williams v. Long*, 585 F. Supp. 2d 679, 684-85 (D. Md. 2008)) (alterations in *Butler*). Based on the submissions, the court "determines whether there is sufficient evidence to reasonably determine that the proposed class members are similarly situated enough to conditionally certify the collective action and provide potential class members with initial notice of the action and the opportunity to 'opt-in.'" *Houston*, 591 F. Supp. at 831.

**B.**

Pooner has submitted six exhibits in support of his allegations. These include Pooner's Declaration (ECF 17-1), which primarily repeats the allegations contained in the Complaint. He also filed a copy of an email (ECF 17-2) from Strohm to six Mariner branches, dated April 25, 2017, discussing the cash box duties. Strohm stated, *id.* (original omission):

> So questions have come up over the deposit being dropped after hours, I am ok with the employee dropping the deposit to leave a few minutes early to accommodate them for dropping the bag, if unable to leave early due to branch schedule etc….managers please comp the time within the same period if need be.

Contrary to plaintiff's allegations, the email suggests that Mariner made efforts to ensure that employees did not need to work extra time to complete their cashbox duties. Nor does the email suggest that defendants would not pay overtime if an employee worked more than 40 hours in a week. Moreover, this email was sent only to Strohm's district, which contains six branches; it was not a nationwide email sent to all Mariner branches. *See* ECF 20-1, ¶ 7.

Plaintiff also submitted the Declaration of Gregory B. Herbers, Esq. (ECF 17-3), an associate attorney at Hoffman Employment Law, LLC, the firm representing plaintiff in this matter. Herbers states that he prepared and compiled a list of Account Representative Job Postings (ECF 17-4) and over 200 pages of job postings for 118 offices in 21 states. ECF 17-5, ¶ 2. The postings describe the job duties, the minimum hiring requirements, physical requirements of the

job, and compensation. *Id.* Herbers states that nearly all of the job postings for 118 separate Mariner offices had identical "Responsibilities, "Physical Demands," and "Benefits" sections. *Id.* That is, the job postings were substantially the same. *Id.*

In his Declaration, Herbers also states that he found anonymous employee reviews (ECF 17-6) of Mariner on Indeed.com and Glassdoor.com. ECF 17-5, ¶ 3. Specifically, he found nine reviews on Mariner's overtime practices. *Id.* As discussed, *infra*, plaintiff relies on these anonymous reviews to argue that Mariner has failed to pay overtime to similarly situated Mariner employees around the country.

Defendants contend that courts in this district routinely deny nationwide certification in the absence of evidence demonstrating that the same FLSA violation existed throughout the employer. ECF 20 at 11. Moreover, they maintain that these courts have denied conditional certification in several cases in which the plaintiffs provided more evidence of uncompensated overtime than Pooner has provided here. *Id.*

In *Mitchel v. Crosby Corp.*, DKC 10-2349, 2012 WL 4005535 (D. Md. Sept. 10, 2012), four loan underwriters working at a facility in McLean, Virginia for the Federal Home Loan Mortgage Corporation ("Freddie Mac") sought conditional certification of a nationwide class of loan underwriters. *Id.* at *1. The four plaintiffs submitted declarations stating that they had worked more than 40 hours per week without overtime pay. *Id.* at *3. The plaintiffs further declared that the defendant employers knew that their employees could not meet their quotas in a 40-hour workweek. They also asserted that defendants were aware of the overtime work but nonetheless instructed them not to report more than 40 hours per week. *Id.* at *3. Additionally, all four plaintiffs asserted that they had personal knowledge of other underwriters who were not paid for overtime hours. Nevertheless, the court denied their motion as to nationwide certification,

concluding that the plaintiffs had "offered no evidence of Defendants' failure to pay overtime at any other Freddie Mac facilities" and had therefore "failed to meet their burden with respect to Defendants' policies outside of the McClean, Virginia facility." *Id*. Absent an evidentiary showing that underwriters at other Freddie Mac facilities were improperly denied overtime pay, the court refused to grant a nationwide class. *Id*.

Similarly, in *Andrade v. Aerotek, Inc.*, CCB-08-2668, 2009 WL 2757099 (D. Md. Aug. 26, 2009), six recruiter trainees moved for conditional certification of a nationwide class of certain recruiters for an international staffing services company with approximately 150 offices in the United States. Four of the plaintiffs were located at the employer's Charlotte, North Carolina office, and the other two were located at two California offices. *Id*. at *2. In support of their motion, plaintiffs relied on their own testimony in depositions as well as time sheets recording hours worked each day. *Id*. at *4, n. 12. Because "all of the plaintiffs who have offered testimony indicating the existence of this under-reporting policy were former employees of Aerotek's Charlotte office," Judge Blake found sufficient evidence that the employees in that office were subject to a common policy of underreporting work hours. *Id*. at *5. Judge Blake also concluded that members of the Huntersville, North Carolina office were subject to that policy because the policy of underreporting work hours was allegedly enforced by the same manager at both North Carolina offices. *Id*. at *5, n. 13. However, the court refused to conditionally certify a nationwide class because there existed "no evidence that Recruiter Trainees were discouraged from reporting overtime while being made to work overtime in any Aerotek divisions" other than the Charlotte and Huntersville offices. *Id*.

Defendants also point to *Camper*, 200 F.R.D. 516, in which Judge Blake denied certification of a nationwide class of 1700 employees working across 47 nursing home facilities.

The eleven plaintiffs alleged that they frequently worked through their lunch breaks but were not compensated for that time. *Id*. at 516. Plaintiffs provided evidence establishing that the defendant employer had a nationwide "policy of automatically deducting a 30–minute unpaid daily lunch break from the pay of all hourly employees who work at least six hours a day." *Id.* at 520. They also provided testimony from employees at one facility that their supervisors knew of their unpaid work. Again, nationwide certification of a collective was denied, and conditional certification was granted only as to the location in which plaintiffs offered evidence of personal knowledge of overtime violations. It was not enough for plaintiffs to show that the employer maintained a nationwide policy, when there was no evidence of knowledge

Notably, in each of these cases, the plaintiffs produced more evidence than Pooner has here, yet collective certification for a nationwide class was still denied. As indicated, Pooner relies on his own Declaration, an email from Strohm, job postings and job descriptions, and anonymous online reviews of Mariner. He offers no declarations from other representatives at the two Mariner branches at which he worked, nor from other branches of Mariner around the country. Indeed, plaintiff asserts only that he "witnessed other account representatives similarly work over forty hours in a workweek." ECF 17-1, ¶ 7. But, he provides no evidence that these employees were denied overtime compensation.

Nevertheless, plaintiff maintains that the anonymous reviews of Mariner (ECF 17-6), as well as the job descriptions (ECF 17-4), suffice to establish that the representatives of Mariner were subject to a common scheme of uncompensated overtime. ECF 17 at 14. Plaintiff contends that his own Declaration is sufficient preliminary evidence that he and other representatives at Mariner were subject to a common scheme of overtime violations. ECF 23 at 10. Plaintiff relies on *Williams v. ezStorage Corp.*, RDB-10-3335, 2011 WL 1539941, at *3 (D. Md. Apr. 21, 2011),

in which the court conditionally certified a case involving 45 separate locations of work based on a single affidavit. In that case, the plaintiffs alleged that they were required to perform month-end recordkeeping procedures without compensation. *Id*. at *1. Conditional certification was granted because all "residential and relief managers" were subject to the same pay and work policies. *Id*. at *3.

But, as even plaintiff acknowledges, the court in that case did not rely on the single affidavit alone. *See* ECF 23 at 11. Rather, the affidavit was corroborated by the defendant's stipulation that "all Resident and Relief Managers [were] uniformly subject to the same policies, rules, pay systems, hours, and benefits" and by sections of the defendant's operations manual. *ezStorage Corp.*, 2011 WL 1539941, at *3.

Here, defendants have not stipulated to the existence of such a company-wide policy. Nevertheless, plaintiff maintains that defendants provided a constructive stipulation when Matthew Coogan, Human Resources Manager for Mariner stated in his Affidavit, ECF 23 at 11 (quoting ECF 20-1, ¶ 9):

> "Mariner Finance's policy is to discourage overtime but if a representative has to work 'outside normal hours the branch may direct the employee to arrive late or leave early within the same work week in order to maintain a 40 hour work week. If a Mariner Finance representative works over 40 hours in a work week, the representative is compensated for those hours at 1.5 hours the hourly rate."

However, Coogan's statement contains no admission of wrongdoing or of an improper policy. Coogan's statement suggests that all account and customer service representatives are subject to a similar method of overtime compensation, but there is no evidence that other representatives worked overtime and were not compensated for it.

Plaintiff also claims that conditional certification is merited because "the production of identical job descriptions can provide the basis for a finding of a group of similarly situated

employees for the purpose of conditional certification." ECF 17 at 14 (citing *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075 (D. Minn. 2014), and *Shaia v. Harvest Management Sub, LLC*, 306 F.R.D. 268 (N.D. Cal. 2015)). Pooner points to the similar job descriptions (ECF 17-4) for Mariner's account and customer service representatives at 118 separate offices. *See also* ECF 17-3, ¶ 2. He reasons that because the representatives were required to perform the same duties, which allegedly cause the overtime hours, all representatives with those duties would be entitled to overtime.

As indicated, plaintiff relies on, *Chin,* 57 F. Supp. 3d 1075, and *Shaia*, 306 F.R.D. 268, to establish that identical or near identical job descriptions can suffice for conditional certification. In those cases, the plaintiffs were misclassified as exempt under the FLSA, and used the similar job descriptions to demonstrate that all employees with that position were misclassified. But, Pooner's case is not a misclassification case. Rather, it is an "off the clock" case in which the plaintiff alleges that he worked off the clock without receiving overtime pay. As defendant notes, "nothing in the job description [that] suggest[s] non-exempt representatives work overtime without compensation." ECF 20 at 16. Accordingly, plaintiff's reliance on *Chin* and *Shaia* is misplaced, and his argument is unavailing.

If the Court does not conditionally certify a nationwide class, Pooner asks the Court to allow time for him to conduct discovery. ECF 23 at 16. Accordingly, the Court need not consider whether Pooner has provided adequate evidence to warrant conditional certification of a narrower class. *See, e.g.*, *Sjoblom v. Charter Commc'ns, LLC*, No. 3:07-CV-0451-BBC, 2007 WL 4560541, at *9 (W.D. Wis. Dec. 19, 2007) (allowing plaintiff additional time to file discovery materials in support of conditional certification of a statewide or nationwide class). Accordingly, the parties shall submit, jointly if possible, a draft scheduling order to the Court.

### III. Conclusion

In the absence of some evidentiary showing of FLSA violations at other Mariner facilities, the Court will not certify a nationwide class. For the foregoing reasons, plaintiff's Motion shall be denied, without prejudice. An Order follows.

Date: June 20, 2019

/s/
Ellen L. Hollander
United States District Judge